PUPKE and others vs. THE RESOLUTE FIRE INSURANCE COMPANY.

After an assignment of a policy of insurance with the consent of the insurance company, a non-compliance with the terms of the policy by the assignor, in matters material to the interests of the company, will avoid it as against the assignee.

Such a violation of the conditions of the policy as would defeat a recovery by the party originally insured, must have a like effect as against his assignee, whether it occur before or after the loss.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to recover the amount of a policy of insurance issued by the defendant to Wise & Co. on a stock of groceries, which was destroyed by fire February 24th, 1860. The complaint was in the usual form, with a copy of the policy annexed. The ninth condition of insurance attached to the policy contained these words: "Persons sustaining losses or damages by fire

shall forthwith give notice thereof in writing to the company, and as soon after as possible they shall deliver as particular an account of their loss and damage as the nature of the case will admit, * * and shall accompany the same with their oath or affirmation, declaring the said account to be true and just. * * * Whenever required, the insured, or person claiming, shall produce and exhibit to the company, at its office, his books of account and other vouchers in support of his claim, and permit extracts and copies thereof to be made, * * * and until such proofs, declarations &c. are produced * * the loss shall not be payable. * * * All fraud or false swearing shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against the insured on the policy."

The answer alleged, among other things, that Wise & Co. were guilty of fraud in furnishing their proofs of loss and damage, by representing their stock at the fire as worth $22, 582, when it in fact amounted to only $8, 389 ; and by altering their books of account, and producing false and altered invoice bills of purchase, to sustain such false representation.

On the trial, the plaintiffs read in evidence an indorsement on the policy, by which Wise & Co., on the 10th of March, 1860, assigned their interest in the policy to the plaintiffs ; and also an instrument by which the company, on the 15th of the same month, consented to such assignment of the policy, " subject to all the terms and conditions therein mentioned." It was admitted that due notice of the fire was given to the company, and the preliminary proofs furnished it were introduced in evidence to show that Wise & Co. had complied with the policy in that particular. Said proofs were in the usual form, and stated the amount of the stock at the time of the fire as at least $22,000, which was professedly arrived at by taking an inventory made in 1859, and then stating the amount of subsequent purchases and sales. When the plaintiff had introduced some other evidence, and rested, the defendant

called a witness, who testified that in February, 1860, he was employed by the defendant in the matter of the loss of Wise & Co.'s stock; that he was engaged in examining the matter on the 8th and 9th of March, 1860; that the books of Wise & Co. were so mutilated that the amount of the September purchases (1859) could not be ascertained therefrom; that on that account he required Wise & Co. to produce duplicate bills of those purchases; that the examination was then adjourned to allow them to get such duplicate bills, they agreeing to meet again in two weeks; that when they again met, Sigmund and Joseph Wise, (who composed the firm of Wise & Co.,) the witness and several other persons were present. *Question:* "State what took place, and what was said at that interview relative to this loss." Objected to by the plaintiffs, on the ground that this interview was after the assignment of the policy to the plaintiffs, and they could not be prejudiced by what then took place. The objection was sustained. The defendant then offered to prove "that Wise & Co., in furnishing subsequent preliminary proofs and bills of purchase, according to the requirement so made of them, were guilty of the frauds alleged in the answer." An objection by the plaintiffs was sustained; and the court ruled out all evidence of transactions which occurred between Wise & Co. and the defendant subsequently to the date of said assignment. After the introduction of further evidence by both parties, the defendant requested the court to instruct the jury as follows: "If the jury believe from the evidence that Wise & Co. produced to the defendant in support of their claim, altered or false bills of purchase, as a part of their preliminary proofs of loss, then they were guilty of fraud, which forfeited all claim on the defendant, and the plaintiffs cannot recover in this action." The court gave this instruction after adding the following words: "Provided such bills of purchase were produced previous to the assignment to plaintiffs." It refused the following instruction, asked for by the defendant: "The

assignment of the policy to the plaintiffs after the happening of the loss, and after the sworn statement thereof had been furnished to the defendant by Wise & Co., and while the further preliminary proofs and examination of Wise & Co. were being made, did not relieve Wise & Co. from submitting to such examination, and furnishing such other preliminary proof as was required by the defendant under the policy: and any fraud or false swearing committed by them in such examination and in furnishing such additional proofs would forfeit all claim under the policy, the same as though no assignment had been made."

Verdict for the plaintiffs; motion for a new trial denied; and judgment upon the verdict; from which the defendant appealed.

*Cary & Pratt*, for appellant.

*Emmons, Van Dyke & Hamilton*, for respondents:

The assignment of a policy of insurance, *after a loss* has happened, stands on the same footing as the assignment of a debt, or right to recover a sum of money actually due. *Brichta v. N. Y. La Fayette Ins. Co.*, 2 Hall, 372; *Mellen v. Hamilton Ins. Co.*, 17 N. Y., 609. No act of the assured, after an assignment of the policy *with the assent of the insurer*, shall impair the rights of the assignee. *Tillou v. Kingston Mut. Ins. Co.*, 7 Barb., 570; *Same Case*, 1 Seld., 405; *Pollard v. Somerset Mut. Ins. Co.*, 42 Me., 221. An assignee is entitled to recover notwithstanding any subsequent violation of the conditions of the policy by the assured. *Grosvenor v. Atlantic Fire Ins. Co.*, 5 Duer, 517; *Robert v. The Trader's Ins. Co.*, 9 Wend., 404. The policy in this case is to be construed and have effect according to the law of New York, the defendant being a corporation of that state. *St. John v. The Am. Mut. Ins. Co.*, 2 Duer, 419.

*By the Court*, PAINE, J. This case presents, among others, the question whether, after an assignment of a policy of insurance, with the consent of the company, a non-compliance with

the terms of the policy by the assignor, in matters material to the interests of the company, will avoid it as against the assignee. We are not aware that this question has ever been decided in this state; and we feel at liberty to determine it as legal principles seem to require.

In New York it has been held that such subsequent violations of the policy by the assignor, did not affect the right of the assignee to recover upon it. But the courts there admit that other authorities are against that position; and without searching further, we should not expect to find a more satisfactory exposure of its fallacy and injustice than is contained in the opinions of Justices WOODRUFF and BOSWORTH, in the cases of *Grosvenor vs. Atlantic Fire Insurance Co.*, 5 Duer, 517. It is true they decided according to the previous decisions in that state, by which they felt bound. But in doing so they hung out a light by which all who were not bound by those decisions, might see and avoid the error.

Their reasoning shows that there is nothing in a consent to the assignment of the policy that can justly be held to waive a compliance with any of the terms or conditions of it essential to the protection of the company. Such consent only authorizes the assignee to be substituted as payee, in case a liability to pay accrues according to the terms and conditions of the policy. But if those terms and conditions are not complied with, then there is never any liability to pay anybody.

And it is immaterial whether the violation occurs after or before the loss. If it be such a violation as would defeat a recovery by the party originally insured, it must have like effect as against the assignee.

For these reasons, the evidence offered to show a violation of the policy by the assignors, after the assignment, should have been admitted.

The judgment is reversed, with *costs*, and a new trial ordered.